# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSH THOMAS, | CV F  06-0588 OWW SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| CALIFORNIA BOARD OF PRISON TERMS COMMISSIONERS, et al., | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is in custody following his 1982 conviction for second degree murder, with an enhancement for the use of a firearm. (Exhibit A, Abstract of Judgment, attached to Answer.) Petitioner is serving a sentence of 17 years-to-life. (Id.)

In the instant petition, Petitioner does not challenge the validity of his conviction, rather, he alleges that the Board of Parole Hearings (BPH) had insufficient evidence to find him unsuitable for parole at his August 3, 2004, parole suitability hearing.[1]

The BPH found Petitioner not suitable for parole based on the fact that he would pose an

---

[1] Petitioner raises six grounds for relief in the petition, all of which set forth reasons why there was insufficient evidence to support the Board's denial of parole. Accordingly, this Court, as did Respondent, will address Petitioner's sole claim.

1

unreasonable risk of danger to society or a threat to public safety if released.  The BPH based its decision on Petitioner's commitment offense, his unstable social history, his history of prior criminality, his inadequate parole plans, and the district attorney's opposition to parole.  (Exhibit B, Subsequent Parole Consideration Hearing Transcript, August 3, 2004, at 67-69, attached to Answer.)

On December 6, 2004, Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court challenging the Board's decision denying parole.  (Exhibit D, attached to Answer.)  The petition was denied on January 4, 2005.  (Id.)

On January 19, 2005, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District.  The petition was summarily denied on February 24, 2005.  (Exhibit F, attached to Answer.)

On March 21, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was summarily denied on January 18, 2006.  (Exhibit G, attached to Answer.)

Petitioner filed the instant petition for writ of habeas corpus on May 15, 2006. Respondent filed an answer to the petition on September 26, 2006, and Petitioner filed a traverse on October 10, 2006.  (Court Docs. 10, 13.)

## STATEMENT OF FACTS[2]

[On January 14, 1982, the] Fresno Police Department responded to a call of possible gunshots being fired at the Vagabond Hotel in Fresno.  Responding officers spoke to the occupant of room number 70 via telephone.  The occupied - - occupant identified himself as Josh Thomas.  Thomas declared his cousin, Isaac Woods, was in the room with him and all was okay. The responding officer ordered Thomas to step out for questioning.  The officer asked Thomas where his cousin was and he said he was still in bed.  Mr. Thomas yelled into the room for his cousin to come out.  When there was no response, the officer entered the room and found Isaac Woods lying on the bed with no pulse.  Paramedics responded and Woods was pronounced dead

---

[2] This statement of facts is taken from the Board of Parole hearing conducted on August 3, 2004.  (Exhibit B, at 10:8-27, 11:1-2; Exhibit C, attached to Answer.)

at the hospital. Isaac Woods suffered a - - suffered a gunshot wound to the heart and aorta. Lab results showed the victim was .113 milligrams per liter of PCP in his system. Defendant Thomas showed .039 milligrams per liter in his blood system.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death  Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

§ 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

1  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
2  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
3        AEDPA requires that we give considerable deference to state court decisions. The state
4  court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
5  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
6  537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
7        The court looks to the last reasoned state court decision as to the basis for the state court
8  judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501
9  U.S. 797, 803-04 (1991)).  Where, as here, the Fresno County Superior Court found "some
10 evidence" supported the BPH's decision, but provided no reasoning to support its conclusion, a
11 federal habeas court independently reviews the record to determine whether habeas corpus relief
12 is available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).
13 II.      Review of Claims
14       A parole release determination is not subject to all of the due process protections of an
15 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
16 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
17 (explaining that due process is flexible and calls for procedural protections that particular
18 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
19 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
20 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
21 Parole, 833 F.2d 1389, 1390 (9th Cir.1987).  At a state parole board proceeding, the only process
22 to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing,
23 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"
24 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why
25 "he falls short of qualifying for parole." Id.
26       "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court further held that
27 'revocation of good time does not comport with 'the minimum requirements of procedural due
28 process,' unless the findings of the prison disciplinary board are supported by some evidence in

1   the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)."

2   <u>Sass</u>, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court

3   need not examine the entire record, independently assess the credibility of witnesses, or re-weigh

4   the evidence. <u>Id</u>. Rather, the Court must determine whether there is any evidence in the record

5   that could support the conclusion of the disciplinary board. <u>Id</u>., *citing* <u>Superintendent v. Hill</u>, at

6   455-56. Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies

7   to parole, as both situations "directly affect the duration of the prison term." <u>Id</u>., *citing* <u>Jancsek</u>

8   <u>v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

9   With regard to the procedural protections outlined in <u>Greenholtz</u>, as Respondent submits,

10  Petitioner was provided all that is required. Petitioner was provided with advance notice of the

11  hearing, an opportunity to submit materials for the BPH's consideration, an opportunity to be

12  heard during the hearing, and a written decision explaining the reasons that parole was denied.

13  At the 2004 parole hearing, the BPH relied on several factors including Petitioner's

14  commitment offense, his unstable social history, his history of prior criminality, his lack of

15  vocational training, his inadequate parole plans, and the district attorney's opposition to parole,

16  in denying parole. (Exhibit B, at 67-69.) The state courts' determination of this issue was not

17  contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

18  The first factor the BPH relied on was the fact that the motive for the murder was

19  inexplicable in relation to the offense. (Exhibit B, 67:7-11; Cal.Code Regs. tit. 15, §

20  2402(c)(1)(E).)[3] Under California law, an inexplicable motive is "one that is unexplained or

21  unintelligible, as where the commitment offense does not appear to be related to the conduct of

---

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

the victim and has not other discernable purpose." In re Scott, 119 Cal.App.4th 871, 892-893 (2004). As Respondent submits, Petitioner and the victim were cousins, and Petitioner stated that he had no bad feelings toward him and they had not been fighting. (Exhibit B, 18:23-26.) Yet, for no apparent reason, Petitioner took the gun and shot his cousin through the heart. (Exhibit B, 67:13-14.) Although Petitioner admits to shooting his cousin, he claims that he "blacked out" and does not remember anything. (Id. at 11:4-5; 18:16-18.) However, Petitioner had enough knowledge after the shooting to hide the weapon in a tissue dispenser box in the hotel room. (Exhibit E, at p. 2-3.) Thus, some evidence supports this finding. Although Petitioner contends that he was under the influence of drugs at the time of the offense, this was disputed. (*See* Exhibit E, at 51-54.)

The BPH stated that Petitioner had an unstable social history which may be properly considered as a circumstance tending to indicate unsuitability for parole. See 15 C.C.R. § 2402(c)(3). Here, however, the Board did not provide any support for its finding of an unstable social history. Therefore, this Court cannot determine whether "some evidence" supports that finding.

The BPH further found that Petitioner's prior criminality, including arrests for burglary, grand theft auto, felon addict in possession of a firearm, receiving stolen property, taking a vehicle without the owner's consent, and shooting at an unoccupied dwelling. 15 C.C.R. §§ 2402(b). Section 2402(b) allows the BPH to consider "past criminal history, including involvement in other criminal misconduct which is reliably documented." In addition, section 2402(b) states that "[a]ll relevant, reliable information available to the panel shall be considered in determining suitability for parole." Thus, it was not improper for the BPH to consider this evidence in its determination.

In his traverse, Petitioner contends that the BPH's continued reliance on his commitment offense and prior criminal history violates due process. Petitioner relies on the Ninth Circuit's holding in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003). There, the Court stated that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison

system and could result in a due process violation." Id. at 916-917.  In Sass v. Calif. Bd. of Prison Terms, the Ninth Circuit stated however that "[u]nder AEDPA is not our function to speculate about how future parole hearings could proceed." 461 F.3d 1123, 1129 (9th Cir. 2006). The Court upheld the denial of parole based on Sass's commitment offense and prior criminal history because it was "some evidence" supporting the Board's decision. Recently in Irons v. Carey, ___ F.3d ___, 2007 WL 2027359, as amended, (July 13, 2007), petition for rehearing en banc pending, the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior criminal history, stating that "in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence." Irons, at *6. Although, here, unlike in Biggs, Sass, and Irons, Petitioner has served the minimum number of years in which he was sentenced,[4] distinguishable from Biggs, Sass, and Irons, the Board of Parole did not rely solely on the commitment offense and prior criminality in denying parole.

The BPH also found that Petitioner failed to develop marketable skills and upgrade vocationally. (Exhibit B, 68:1-6; see 15 C.C.R. § 2402(d)(8).) Although Petitioner had been involved in a lot of vocations, Petitioner completed only the bakery vocation in 1989. (Id., at 37:7-9.) He did not complete the dry cleaning vocation, and only completed four of the 57 units of vocational electronics. (Id. at 37:15-17.) The BPH further found that Petitioner had inadequate parole plans in California and no offers of employment. (Id.) The BPH noted that Petitioner planned on gaining "employment in the area of appliance repair; specifically, microwave ovens." (Id., at 30:24-25.) Beyond a letter from Edward Shotwell, dated July 15, 2003, who stated that he was willing to assist Petitioner financially and with employment as an assistant or pastor in Bakersfield, California (Id. at 31:27; 32:1-3.), there were no letters

---

[4] Here, as previously stated, Petitioner was convicted of second degree murder in 1982, and sentenced to 17-years to life in prison. Thus, in 1999, Petitioner had served the minimum 17 years in prison. Petitioner was subsequently denied parole in 2000, 2002, and at issue here 2004.

confirming any concrete plans or offers of employment or residency in Fresno County.[5] (Id. at 31:1-11.) Finally, the BPH considered the District Attorney's opposition to parole. This was properly considered pursuant to California Penal Code section 3042(a) and (f)(3), and 15 C.C.R. § 2402(b).

On balance, the BPH's finding is supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

---

[5] It was noted that Petitioner wished to transfer and parole to Arkansas as he had no immediate family members in the area. He had submitted an application for an interstate transfer to his counselor, but never heard back. He had yet to re-submit the application to his new counselor. (Exhibit B, at 29-30.)

IT IS SO ORDERED.

**Dated:   August 31, 2007**                              **/s/ Sandra M. Snyder**
                                                  UNITED STATES MAGISTRATE JUDGE